1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| WANDA TURNER | ) | Case No. EDCV 09-1329 JC |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER OF REMAND |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

_____

18

## I.   SUMMARY

19
20
21
22

On July 16, 2009, plaintiff Wanda Turner ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before a United States Magistrate Judge.

23
24
25
26

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; July 22, 2009 Case Management Order ¶ 5.

27
28

///
///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand because the Administrative Law Judge ("ALJ") erred in rejecting the opinion of plaintiff's treating physician.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 24, 2005, plaintiff filed an application for Disability Insurance Benefits.  (Administrative Record ("AR") 13).  Plaintiff asserted that she became disabled on November 9, 2004, due to multiple herniated discs in her neck and back and chronic pain.  (AR 218, 221).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert on October 22, 2007 and January 5, 2009.  (AR 25-88).

On February 26, 2009, the ALJ determined that plaintiff was not disabled through June 30, 2007, the date last insured.  (AR 13-24).  Specifically, the ALJ found:  (1) plaintiff suffered from pain in her neck and back secondary to a severe impairment in the musculoskeletal system (AR 15); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 18); (18) plaintiff retained the residual functional capacity to perform medium work with some physical and mental limitations (AR 19);[1]

_____

[1]The ALJ stated:

[plaintiff] was limited to lifting and/or carrying 10 pounds frequently, 50 pounds occasionally; standing and/or walking one hour at a time up to two hours in an eight-hour workday, and sitting two hours at [a] time up to six hours in an eight-hour workday.  She did not require an assistive device to ambulate and could climb ramps or stairs, but was precluded from climbing ladders, ropes and scaffolds.  The claimant could frequently balance, stoop, kneel, crouch, or crawl. She could not work at unprotected heights and could occasionally work around moving mechanical parts or operate motor vehicles.  She could frequently be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, cold,

(continued...)

1  and (4) plaintiff could perform her past relevant work as a bank teller or home care
2  provider (AR 23).

3       The Appeals Council denied plaintiff's application for review.  (AR 1-3).

4  **III.  APPLICABLE LEGAL STANDARDS**

5       **A.    Sequential Evaluation Process**

6       To qualify for disability benefits, a claimant must show that she is unable to
7  engage in any substantial gainful activity by reason of a medically determinable
8  physical or mental impairment which can be expected to result in death or which
9  has lasted or can be expected to last for a continuous period of at least twelve
10 months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
11 § 423(d)(1)(A)).  The impairment must render the claimant incapable of
12 performing the work she previously performed and incapable of performing any
13 other substantial gainful employment that exists in the national economy.  Tackett
14 v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

15      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
16 sequential evaluation process:

17      (1)    Is the claimant presently engaged in substantial gainful activity?  If so,
18             the claimant is not disabled.  If not, proceed to step two.

19      (2)    Is the claimant's alleged impairment sufficiently severe to limit
20             her ability to work?  If not, the claimant is not disabled.  If so,
21             proceed to step three.

22      (3)    Does the claimant's impairment, or combination of

23

24  ────────────────

25      [1](...continued)
26  heat, and vibrations.  She could be exposed to loud noises.  Non-exertionally, the
    claimant could perform, remember, understand, and carry out simple to
26  moderately complex instructions.  She may have had mild difficulty tolerating
27  ordinary pressures at work but would hot have had difficulties interacting with
    others.
28

(AR 19) (internal footnote omitted).

3

impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and fairly develop record and to assure that claimant's interests are considered). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

///

///

---

[2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. Robbins v. Social Security, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).

1

**B.    Standard of Review**

2      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

3 benefits only if it is not supported by substantial evidence or if it is based on legal

4 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

5 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

6 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion."  Richardson v. Perales,

8 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere

9 scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v.

10 Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

11      To determine whether substantial evidence supports a finding, a court must

12 "'consider the record as a whole, weighing both evidence that supports and

13 evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

14 Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

15 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

16 or reversing the ALJ's conclusion, a court may not substitute its judgment for that

17 of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

18 **IV.   DISCUSSION**

19      Plaintiff contends that the ALJ improperly evaluated the medical evidence in

20 rejecting the opinion of her treating physician, Dr. Ahmed.  (Plaintiff's Motion at

21 3-9).  Upon reviewing the record, the Court agrees.

22      **A.    Pertinent Law**

23      In Social Security cases, courts employ a hierarchy of deference to medical

24 opinions depending on the nature of the services provided.  Courts distinguish

25 among the opinions of three types of physicians:  those who treat the claimant

26 ("treating physicians") and two categories of "nontreating physicians," namely

27 those who examine but do not treat the claimant ("examining physicians") and

28 those who neither examine nor treat the claimant ("nonexamining physicians").

1    Lester v. Chater, 81 F.3d 821, 830 (9th Cir.), as amended (1996) (footnote

2    reference omitted).  A treating physician's opinion is entitled to more weight than

3    an examining physician's opinion, and an examining physician's opinion is entitled

4    to more weight than a nonexamining physician's opinion.  See id.  In general, the

5    opinion of a treating physician is entitled to greater weight than that of a

6    non-treating physician because a treating physician "is employed to cure and has a

7    greater opportunity to know and observe the patient as an individual."  Morgan v.

8    Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

9    1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

10         A treating physician's opinion is not, however, necessarily conclusive as to

11   either a physical condition or the ultimate issue of disability.  Magallanes v.

12   Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

13   759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

14   contradicted by another doctor, it may be rejected only for clear and convincing

15   reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

16   quotations omitted).  An ALJ can reject the opinion of a treating physician in favor

17   of a conflicting opinion of another examining physician if the ALJ makes findings

18   setting forth specific, legitimate reasons for doing so that are based on substantial

19   evidence in the record.  Id. (citation and internal quotations omitted).  "The ALJ

20   must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418,

21   421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain

22   why they, rather than the [physician's], are correct."  Id.; see Thomas v. Barnhart,

23   278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed

24   and thorough summary of facts and conflicting clinical evidence, stating his

25   interpretation thereof, and making findings) (citations and quotations omitted).

26   "Broad and vague" reasons for rejecting a treating physician's opinion do not

27   suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.1989).

28   ///

1    When they are properly supported, the opinions of physicians other than
2    treating physicians, such as examining physicians and nonexamining medical
3    experts, may constitute substantial evidence upon which an ALJ may rely. <u>See</u>,
4    <u>e.g.</u>, <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative
5    examiner's opinion on its own constituted substantial evidence, because it rested
6    on independent examination of claimant); <u>Morgan</u>, 169 F.3d at 600 (testifying
7    medical expert opinions may serve as substantial evidence when "they are
8    supported by other evidence in the record and are consistent with it").

9    **B.    The Record Does Not Support the ALJ's Decision**

10   In determining that plaintiff retained the residual functional capacity to
11   perform a limited range of medium work, the ALJ adopted the opinion of
12   consultative orthopedic surgeon, Dr. William Boeck.  (AR 22 (citing AR 791-802).
13   The ALJ explained:

14       As for the opinion evidence, substantial weight is given to the three
15       consultative examinations, in which all of the Board certified
16       orthopedic surgeons agreed that the claimant was not disabled.  After
17       reviewing the available medical records and examining the claimant,
18       on two occasions Dr. Dorsey clearly stated that the claimant had no
19       impairment-related physical impairments.[3]  On October 14, 2008, Dr.

---

[3]Dr. Thomas Dorsey prepared two Orthopaedic Consultation reports dated March 13, 2006 and December 26, 2006.  (AR 476-79, 513-17).  Plaintiff complained to Dr. Dorsey of neck, shoulder, wrist, hand, foot, lower back, and hip pain, weakness in both hands with the left hand being the worst, and bilateral shoulder pain in a diffuse manner.  (AR 476).  Plaintiff said her pain is throbbing and burning and worse on sitting, standing, walking, bending, and lifting.  (AR 476).  Plaintiff was undergoing physical therapy at the time of the first evaluation.  (AR 476).  By the time of the second evaluation, plaintiff reported that she was using a cane at all times and had sickness to the stomach and bladder control issues.  (RT 513).

Dr. Dorsey reviewed plaintiff's x-rays showing narrowing in the L5-S1 interspace with mild changes of degeneration and decreased interval space between the head and acromion of plaintiff's left shoulder.  (AR 476, 513).  Dr. Dorsey also reviewed an MRI of plaintiff's lumbar spine showing a 3.5 millimeter disc bulge at L3-L4, a 3.5 millimeter disc desiccation and

(continued...)

7

1  Boeck[] had an opportunity to review numerous additional medical

2  records[4] before examining the claimant and gave the claimant's

3  subjective complaints additional consideration finding that she would

4  be able to lift and/or carry up to 20 pounds frequently, 50 pounds

5  occasionally.  He reported that claimant could stand and/or walk an

6  hour at a time up to two hours in and eight-hour workday and sit two

7  hours at a time, up to six hours in an eight-hour workday.[5]  He

8  imposed no manipulative limitations and said the claimant was

9  capable of operating foot controls continuously.  The doctor found the

10  claimant could frequently climb ramps or stairs, balance, stoop, kneel,

11  crouch, or crawl, but would be precluded from climbing ladders,

12  ropes, or scaffolds.  The doctor said the claimant should not work at

13

14  _____

15  [3](...continued)
osteophyte at L4-L5, bilateral facet arthropathy at L4-L5, and osteophytes at L5-S1 with bilateral

16  facet arthropathy, producing mild spinal canal narrowing and mild bilateral neuroforaminial
encroachment.  (AR 476, 513-14).  Upon the first examination, Dr. Dorsey noted grossly normal

17  findings.  (AR 477-78).  Dr. Dorsey diagnosed plaintiff with "multiple somatic complaints,
without evidence of significant orthopaedic pathology," and radiographic findings of the lumbar

18  spine consistent with plaintiff's age.  (AR 479).  Dr. Dorsey opined that plaintiff has no
impairment-related limitations.  (AR 479).  Upon the second examination, Dr. Dorsey noted that

19  plaintiff's right and left shoulders and right and left knees showed decreased range of motion,
diffuse nonanatomic tenderness in the left upper extremity from elbow to wrist, decreased range

20  of motion to the left wrist, decreased sensation for the fingers on plaintiff's left hand compared
to the right hand, and decreased sensation in the left foot compared to the right foot.  (AR 515-

21  16).  Notwithstanding these notations, Dr. Dorsey again opined that plaintiff would have no
impairment-related physical limitations.  (AR 517).

22

23

24  [4]Dr. Boeck's Comprehensive Orthopedic Evaluation notes that Dr. Boeck reviewed "only
three pages of a. . .  four-page report by Dr. Dorsey" (i.e., part of Dr. Dorsey's first report), and

25  while Dr. Boeck did not describe in detail what medical records he reviewed, Dr. Boeck noted
that the medical records he did review pertained "mainly to internal medical problems and

26  emergency room visits for the difficulties."  (AR 794).  Dr. Boeck noted that he reviewed no
radiographs.  (AR 794).

27

28  [5]Dr. Boeck checked that plaintiff could stand up to two hours and walk up to two hours
for a total of four hours in an eight-hour workday.  (AR 797).  Dr. Boeck did not indicate that
plaintiff required a cane to ambulate or reported using a cane.  (AR 791, 797).

1   unprotected heights and occasionally work around moving mechanical
2   parts and operate a motor vehicle.  Dr. Boeck's checked box
3   indicating the claimant is unable to travel without a companion for
4   assistance is rejected by the undersigned as there is no foundation for
5   this statement and nothing in his report to explain the reasoning
6   behind his selection.

7   (AR 22 (internal citations to the record omitted); see also AR 796-802 (Dr.

8   Boeck's Medical Source Statement of Ability to Do Work-Related Activities

9   (Physical); but see AR 491-98 (State agency physician's Physical Residual

10  Functional Capacity Assessment finding that plaintiff can do limited light work

11  with manipulative limitations for plaintiff's left upper extremity); AR 519-22

12  (State agency physician agreeing with light residual functional capacity assessment

13  previously given)).

14      The ALJ adopted Dr. Boeck's opinion regarding physical residual functional

15  capacity over that of plaintiff's Workers' Compensation treating physician, Dr.

16  Khalid Ahmed.  (AR 22-23).  Dr. Ahmed began treating plaintiff on January 21,

17  2005 for an injury sustained while working as a cashier from June 2, 2003 to June

18  2, 2004.[6]  (AR 337, 433).  Dr. Ahmed treated plaintiff until December 2006, when

19  Dr. Ahmed found plaintiff "permanent and stationary."  (AR 336-435).  Plaintiff

20  initially complained of left arm pain, low back pain, right lower extremity pain,

21  and weakness to both upper extremities.  (AR 426).  Dr. Ahmed noted that Plaintiff

22  previously had undergone nerve testing that were negative for signs of carpal

23

24      [6]Prior to seeing Dr. Ahmed, plaintiff underwent a neurological consultation by Dr. Carol
25  Van Petten on September 10, 2004 for reported tremor, weakness and numbness of plaintiff's
    left upper extremity.  (AR 291-92).  Dr. Van Petten observed that plaintiff had "rather slow
26  movements" with a resting tremor in the left hand at times.  (AR 292).  Dr. Van Petten opined
    that plaintiff "probably has early mild Parkinson's disease." (AR 292; see also AR 307 March
27  29, 2006 neurological consultation also diagnosing Parkinson's disease).   A rheumatology
    consultation report from December 13, 2004, notes that a nerve conduction study from
28  December 2003 of plaintiff's bilateral upper extremities revealed "very mild left sensory
    neuropathy."  (AR 293-94).

tunnel syndrome but that plaintiff reported having numbness and tingling of the left wrist and hand. (AR 427-28). Dr. Ahmed reviewed plaintiff's x-rays which showed slight scoliosis, narrowing of the L5-S1 interspace with mild degenerative changes, and a decreased interval between the humeral head and acromion of plaintiff's left shoulder. (AR 432). Dr. Ahmed diagnosed plaintiff with cervical strain/disc lesion with left radiculitis/ radiculopathy, impingement syndrome rotator cuff tendonitis in the left shoulder, chronic pain secondary to the tendonitis in the left forearm and hands with "possible electronegative carpal tunnel finding" in the left wrist and hand, lumbar strain/disc lesion to the lumbar spine, and psychophysiological depressive illness with anxiety and possible conversion reaction. (AR 433). Dr. Ahmed recommended that plaintiff have an MRI of her spine, left shoulder, a neurodiagnostic consult, and a psychological evaluation. (AR 434).

Thereafter, Dr. Ahmed examined plaintiff every six weeks. (AR 336-425). At plaintiff's second visit Dr. Ahmed noted that the MRI of her cervical spine showed disc bulges in five locations. (AR 423; see also AR 443-47 (MRI report noting same)). Dr. Ahmed noted evidence of left shoulder impingement. (AR 423; see also AR 440-42 (MRI report)). Dr. Ahmed diagnosed plaintiff with a herniated cervical disc, left shoulder impingement syndrome, and lumbar strain and disc herniation in the lumbar spine. (AR 423). Dr. Ahmed noted that plaintiff needed an MRI of the lumbar spine.[7] (AR 423).

With respect to plaintiff's possible carpal tunnel syndrome, from plaintiff's third visit and on Dr. Ahmed noted that plaintiff showed positive Tinel's for the cubital tunnel and ulnar nerve on the left elbow.[8] (AR 390, 394, 399, 403, 407,

---

[7]At plaintiff's fourth visit, Dr. Ahmed noted that the MRI of plaintiff's lumbar spine showed two disc bulges and mild spinal canal narrowing and mild neuroforaminal encroachment at L5-S1. (AR 415; see also AR 436-39 (MRI report)).

[8]"Cubitus" per Merriam-Webster's Online Medical Dictionary (2010), refers to the
(continued...)

411, 415, 419).  Dr. Ahmed also noted that plaintiff had mild Phalen's test with

carpal tunnel on plaintiff's left side.  (AR 390, 394, 399, 403, 407, 411, 415, 419).

Dr. Ahmed diagnosed plaintiff with chronic pain secondary to tendonitis, left

forearms and hand with possible carpal tunnel findings left wrist and hand by

electroneurodiagnostic testings.[9]  (AR 390, 394, 399, 403, 407, 411, 419).  Dr.

Ahmed had referred plaintiff for testing to neurologist Dr. Mumtaz Ali.  (AR 448-

60).  Dr. Ali's Neurological Report dated February 2, 2005, notes diminished grip

strength in plaintiff's left hand and abnormal EMG and NCV findings per an

Electrodiagnostic Report (AR 451-52; see AR 455-60 (report finding "mild right

S1 radiculopathy" and "mild left carpal tunnel syndrome")).  Dr. Ali diagnosed

plaintiff with mild left carpel tunnel syndrome, myoligamentous injury to the

lumbar spine with radiation of symptoms to the right lower extremity, mild right

S1 radiculopathy, and intermittent tremors of the left hand on rest.  (AR 452).  The

ALJ did not discuss Dr. Ali's reports.  See AR 19-23 (summarizing the evidence

but not mentioning Exhibit 3F pages 13-25 [AR 448-60]).[10]

In his Permanent and Stationary report dated December 15, 2006, Dr.

Ahmed summarized the record of his treatment and plaintiff's examination results,

and diagnosed plaintiff with carpal tunnel syndrome in plaintiff's left wrist and

hand, among other things.  (AR 336-44).  Dr. Ahmed described plaintiff as having

limitations precluding her from repetitive motions of the neck and spine, forceful

---

[8](...continued)
forearm or ulna. See http://www.merriam-webster.com/medlineplus/cubitus (last visited Sept. 28, 2010).

[9]Compare AR 415 (Dr. Ahmed diagnosing plaintiff with "left wrist carpal tunnel syndrome" at her fourth visit).

[10]At plaintiff's first administrative hearing, the ALJ noted that he had note seen any EMG testing or neurological examinations in the file.  (AR 50).  The ALJ indicated that he would have a neurologist examine plaintiff and appear at the next hearing.  (AR 50).  However, there are no records showing that plaintiff underwent any neurological testing prior to the next hearing and the medical expert who testified at the next hearing testified only to plaintiff's alleged mental limitations.  See AR 71-82 (testimony).

1  activities (i.e., lifting, pushing, pulling, grasping, holding, torquing, and

2  performing skilled finger dexterity) in the left shoulder and left wrist, with

3  limitation to light work based on plaintiff's lumbar spine issues.[11]  (AR 346-47).

4        In adopting Dr. Boeck's opinion concerning plaintiff's physical residual

5  functional capacity, the ALJ noted that he was giving "some weight" to treating

6  physician Ahmed's opinion.  (AR 22).  However, the ALJ explained that he was

7  not giving controlling weight to Dr. Ahmed's opinion regarding plaintiff's residual

8  functional capacity.  (AR 22).   Because Dr. Ahmed's opinion was contradicted by

9  other physicians, to reject it the ALJ was required to provide specific, legitimate

10 reasons supported by substantial evidence.  Orn, 495 F.3d at 632.  Here, the ALJ

11 explained:

12        [Dr. Ahmed's] opinion regarding the claimant's residual functional

13        capacity is not entitled to controlling weight as it is not well-supported

14        by objective findings and is not consistent with the other evidence of

15        record.  Indeed, his assessment, while not egregiously exaggerated,

16        does overstate the claimant's limitations, particularly in light of the

17

18        ───────────────

19        [11]In a Spinal Impairment Questionnaire dated March 22, 2007, Dr. Ahmed diagnosed
      plaintiff with a herniated cervical and lumbar disc and tendonitis impingement syndrome of the
20    left shoulder and gave a "guarded" prognosis. (AR 328).  Dr. Ahmed checked that plaintiff had
      a limited range of motion, tenderness, muscle spasm, reflex changes and muscle weakness to the
21    cervical and lumbar spine, crepitus to the left shoulder, positive straight leg testing, positive
      Lasegue's test in the right side, equivocal Lasegue's test in the left side, and issues with
22    plaintiff's reflexes in the knees and with her ankles. (AR 328-29; compare AR 793 (Dr. Boeck
      also noting positive straight leg testing but negative Lasegue's testing)).  Dr. Ahmed noted that
23    "EMG/NCV" nerve conduction studied showed right side radiculopathy and left side carpal
      tunnel syndrome. (AR 330).  Dr. Ahmed circled that plaintiff would be able to sit and
24    stand/walk less than one hour per day, and could frequently lift up to five pounds and
      occasionally lift up to 20 pounds. (AR 331-32).  Dr. Ahmed noted that plaintiff would need to
25    take unscheduled breaks to rest every one to two hours for 10 to 15 minutes. (AR 333).  Dr.
      Ahmed checked that plaintiff likely would be absent from work two to three times a month due
26    to her impairments. (AR 333).  Dr. Ahmed limited plaintiff to no pushing, pulling, bending or
      stooping and checked that plaintiff would have psychological limitations. (AR 334).  Dr. Ahmed
27    noted, "patient has been declared permanent & stationary [with] recommended vocational
      rehabilitation."  (AR 334).
28

1    evidence.  His limitations [regarding grasping, pinching, holding,
2    torquing and performing skilled finger dexterity] allegedly secondary
3    to carpal tunnel syndrom are rejected because the doctor's own
4    reports, including the permanent and stationary report dated December
5    15, 2006 fail to even mention carpal tunnel as one of claimant's
6    diagnoses.  As to his March 22, 2007 spinal impairment questionnaire,
7    his responses are given reduced weight because they are hyperbolic
8    limitations without further explanation, contained in a form consisting
9    largely of checked boxes that was formulated by the claimant's
10   attorney.  On one area, the doctor reported the claimant would be
11   unable to sit, or stand and/or walk more than an hour a day; yet he
12   recommends the claimant participate in vocational rehabilitation,
13   which would not be feasible given these limitations.  The doctor even
14   added psychological conditions and limitations in this questionnaire.
15   Not only is Dr. Ahmed Nashed[12] not a mental health expert, his
16   "opinion" consists of no more than a check-list assessment that does
17   not include an explanation of the basis of his conclusions.  Finally, Dr.
18   Ahmed's conclusions of disability are based on criteria other than
19   Social Security Regulations, as such determinations are reserved for
20   the Commissioner.  Accordingly, while I do not entirely dismiss Dr.
21   Ahmed's opinion, I cannot find it sufficiently supported to warrant the
22   establishment of any limitations beyond those set forth above.
23   (AR 22-23 (internal citations and footnotes omitted)).  These reasons are not
24   specific, legitimate reasons to support rejecting Dr. Ahmed's opinion.
25   ///
26
27
28

_____

[12]The reference to Dr. Nashed appears to be in error.

13

1    First, contrary to the ALJ's reasoning, the record shows that Dr. Ahmed

2    opined consistently after plaintiff's neurological examination by Dr. Ali that

3    plaintiff suffered from possible carpal tunnel syndrome in her left hand and wrist.

4    (AR 390, 394, 399, 403, 407, 411, 419).   Dr. Ahmed's Permanent and Stationary

5    report specifically included a diagnosis of left wrist/hand carpal tunnel syndrome.

6    (AR 344).  Dr. Ahmed's findings were consistent with Dr. Ali's neurological

7    evaluation.  (AR 448-60).  Given that the ALJ did not mention Dr. Ali's findings, it

8    is unclear whether the ALJ simply overlooked this objective evidence to support

9    Dr. Ahmed's opinion or whether the ALJ erred in finding that Dr. Ahmed's

10   findings were not "well-supported" by objective medical evidence.  Moreover, as

11   noted above, the record contains two non-examining State agency physician

12   opinions finding that plaintiff would have manipulation limitations in her left upper

13   extremity.  See AR 491-98 (Physical Residual Functional Capacity Assessment),

14   AR 519-22 (Request for Medical Advice).  The ALJ did not mention these

15   opinions which support Dr. Ahmed's opinion.

16   Second, to the extent the ALJ questioned whether Dr. Ahmed's

17   recommendation that plaintiff undergo vocational rehabilitation was consistent

18   with his opinion concerning plaintiff's limitations, or to the extent the ALJ

19   believed that Dr. Ahmed's opinion was based on criteria other than as set forth in

20   the Social Security Regulations, the ALJ should have asked Dr. Ahmed for

21   clarification.  An ALJ has an affirmative duty to assist the claimant in developing

22   the record at every step of the sequential evaluation process.  Bustamante, 262 F.3d

23   at 954; see also Webb, 433 F.3d at 687.  The ALJ's duty is triggered "when there is

24   ambiguous evidence or when the record is inadequate to allow for proper

25   evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

26   2001) (citation omitted).

27   ///

28   ///

14

1
2

### C.   The Court Cannot Find From the Record that the ALJ's
### Misstatements about the Evidence Was Harmless

3   The ALJ's misstatements about the evidence calls into question the validity
4   of both the ALJ's residual functional capacity determination and the ALJ's
5   decision as a whole.  See Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th
6   Cir. 1999) (materially "inaccurate characterization of the evidence" warrants
7   remand); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) (same).
8   Though there may be sufficient evidence in the record to support a conclusion that
9   plaintiff has the residual functional capacity the ALJ found, the Court cannot
10  conclude that the ALJ necessarily would have adopted the residual functional
11  capacity the ALJ adopted had the ALJ considered that Dr. Ali and the two
12  reviewing State agency physicians agreed with Dr. Ahmed's assessment that
13  plaintiff suffers from manipulative limitations.

14  Nor can the Court find that the ALJ's error in misstating Dr. Ahmed's
15  findings was harmless.  Assuming, arguendo, that the ALJ would have adopted the
16  State agency physician's limitations concerning plaintiff's left upper extremity,
17  there is inadequate evidence in the record to establish at step five that plaintiff
18  could have worked.  The vocational expert who testified at plaintiff's second
19  administrative hearing opined that a person with "markedly limited in the use of
20  their upper extremities for grasping and find manipulation" would not be able to
21  perform any of plaintiff's past relevant work.  (AR 85).  The vocational expert did
22  not offer an opinion as to whether there exists any work that a person with the
23  residual functional capacity the ALJ found to exist who also had manipulative
24  limitations could perform.

25  ///
26  ///
27  ///
28  ///

15

1   **V.     CONCLUSION**

2        For the foregoing reasons, the decision of the Commissioner of Social

3   Security is reversed in part, and this matter is remanded for further administrative

4   action consistent with this Opinion.[13]

5        LET JUDGMENT BE ENTERED ACCORDINGLY.

6   DATED:  September 30, 2010

7        _____ /s/ _____

8        Honorable Jacqueline Chooljian
         UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26        [13]When a court reverses an administrative determination, "the proper course, except in
     rare circumstances, is to remand to the agency for additional investigation or explanation."
27   Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
     quotations omitted).  Remand is proper where, as here, additional administrative proceedings
28   could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
     1989).